## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TEAMSTERS LOCAL UNION NO. 795,    )
    )
          Plaintiff,    )
       v.    )    Case No. 6:25-cv-01074
    )
THE KROGER CO.,    )
          Defendant.    )

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS COMPLAINT

The Union seeks to compel Kroger to arbitrate the administrative rules and procedures of the Company's qualified ERISA Plans, which govern "open enrollment" for health insurance and dental benefits covering non-employee dependents. These issues fall squarely outside the scope of the parties' collective bargaining agreement (the "CBA"), and are non-arbitrable. Instead, the exclusive mechanism for resolving disputes about insurance coverage and benefits is the mandatory claims review-and-appeal process, established by the statutorily-required ERISA Plan documents. The Union knows this, of course, because its member in this case is actively pursuing his remedies under that alternative dispute resolution process.

The Union relies on § 301 of the Labor Management Relations Act ("LMRA") as the sole basis for federal jurisdiction. The LMRA provides jurisdiction only where the plaintiff pleads a colorable claim that an employer has violated a collective bargaining agreement. The Union is unable to state a colorable claim against Kroger. The CBA requires Kroger to participate in a grievance process, including eventual arbitration, only for disputes involving "the contents of this Agreement." And the CBA does not contain a single provision addressing the administration of health insurance plans, open enrollment, or the requested late enrollment of dependents outside of the open enrollment period. To the contrary, the CBA *excludes* disputes about the terms and

conditions of health insurance and dental benefits, and specifies that those will be governed by the applicable summary plan descriptions ("SPDs"), which have their own independent claim resolution procedures.

Accordingly, Kroger's refusal to proceed with this employee's grievance does not – and could not – constitute a violation of the CBA. Because the face of the Plaintiff's Complaint demonstrates that the Union does not and cannot assert a colorable claim that Kroger violated the CBA, this Court lacks subject matter jurisdiction under the LMRA. If the Court does not dismiss the Complaint pursuant to Rule 12(b)(1) for lack of jurisdiction, the Court should dismiss the Complaint, with prejudice, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The documents attached to and relied upon in the Complaint constitute "forceful evidence" that the parties did not intend to arbitrate disputes over Plan administration or the denial of health insurance and dental benefit claims – especially by non-employees. Indeed, the CBA expressly states that the SPDs will govern such issues, and the SPDs have their own statutorily-required, independent dispute resolution procedures for claims, appeals, and litigation of these issues in court (not arbitration).

## I. <u>LEGAL STANDARD</u>

A Rule 12(b)(1) motion challenges subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). The plaintiff must establish jurisdiction by a preponderance of evidence; mere conclusory allegations of jurisdiction are not enough. *U.S. ex rel. Hafter D.O.v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999). A Rule 12(b)(1) motion can take two forms: a facial attack and a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). On a facial attack, the court accepts as true the allegations in

the complaint, and considers only those allegations. *Id.* On a factual attack, a party may go beyond the allegations and challenge the facts upon which subject matter jurisdiction depends; the court does not presume the truthfulness of the plaintiff's allegations; and the court has "wide discretion" to allow affidavits and other documents without turning the motion into one for summary judgment. *Id.*

Under Rule 12(b)(6), the Court must dismiss a complaint that fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll well-pleaded allegations of the complaint are accepted as true" but "legal conclusions are not." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1144–45 (10th Cir. 2013). On a Rule 12(b)(6) motion, a court may also consider "documents attached to the complaint as exhibits, [and] documents referenced in the complaint that are central to the plaintiff's claims, provided their authenticity is undisputed…." *Brown v. City of Tulsa*, 124 F.4th 1251, 1264 (10th Cir. 2025). Where there is a conflict between the allegations and an exhibit, the exhibit controls. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1105 (10th Cir. 2017) (internal citations omitted).

## II.  BACKGROUND FACTS

### A.  THE CBA

The Union is the collective bargaining representative for hourly employees at Kroger's facilities in Hutchinson and Goddard, Kansas. (Dkt. 1, ¶ 3). The Union and Kroger are parties to

the CBA, which governs workplace disputes involving hourly employees. (Dkt. 1, ¶ 7; Dkt. 1-1).[1] Section 13.1 of the CBA sets forth a procedure for Kroger and the Union to resolve any "grievance, dispute or complaint over the interpretation or application of the contents of this Agreement." (Dkt. 1-1, § 13.1). Specifically, it sets forth a three-step grievance process followed by arbitration if the parties are unable to resolve their dispute. (*Id.*, §§ 13.1-13.3).

Section 37.1 of the CBA addresses health insurance benefits in cursory fashion. It provides that Kroger will offer employees the choice of two health insurance plans – "Plan A" or "Plan C" – and specifies that the operational and administrative terms and conditions of those plans will be governed by the applicable SPD for each plan:

> Employees who have been employed for sixty (60) calendar days will be eligible to receive health care benefits effective the first of the month following sixty (60) days of employment with the Company, or opt for no coverage.

> The Employer agrees to make available the choice of two Health Care Options: Plan A or C; and one Dental Option. A summary can be found as Attachments 1 and 2 to this Agreement. A complete Summary Plan Description Booklet (SPD) is available and will be provided to the Chair of the Kroger IBT National Master Negotiating Committee and to the Executive Officers of each Local Union party to this Agreement. ***The Terms and Conditions of the SPD will govern those items not noted in Attachments #1, and 2.***

---

[1] The Union attaches two documents as "Exhibit A" to its Complaint: (i) the "Master Agreement" between the Union and Kroger (Dkt. 1-1, at ECF Page ID# 2-44); and (ii) a "Local Supplemental Agreement" between the Union and Dillon Companies, LLC ("Dillons"), one of Kroger's subsidiaries. (*Id.*, at ECF Page ID# 45-79). The facilities in Hutchinson and Goddard are owned and operated by Dillons, which is the company that technically employs Alejandro Prieto, the employee who filed the grievance at issue in this case. (Dkt. 1-2; *see also*, Declaration of Rebecca Harris, attached hereto as <u>Exhibit 1</u>, at ¶ 5). Because the only CBA covenants relevant to the issues in this case are found within the Kroger Master Agreement (and the Dillons Local Supplemental Agreement does not come into play), for ease of reference the Company will refer to Mr. Prieto as a "Kroger" employee.

(Dkt. 1-1, § 37.1) (emphasis added). [2]

Attachment #1 to the CBA identifies the employee contributions, deductibles, co-pays, out of pocket maximums, and percentage of coverage for in-network and out-of-network treatments under each of the two health insurance plans. (*Id.,* at ECF Page ID# 43). Attachment #2 to the CBA provides the same information for Kroger's dental plan. (*Id.*, at ECF Page ID# 44). Neither the CBA nor Attachments #1 or #2 address the enrollment of dependents, the open enrollment period, late enrollees, or disputes about the administration of plan benefits.

### B.   THE HEALTH AND DENTAL SPDS

The SPDs for Kroger's health insurance plans ("Plan A" and "Plan C") and dental plan are included as Exhibits A, B, and C, respectively, to the Declaration of Rebecca Harris.[3]  The health plan SPD is "a contract solely between the Employer and Anthem [Insurance Companies, Inc.]," which is the defined "Claims Administrator" for the plan. (Harris Decl., Ex. A, pp. 155, 170). The enrollment of employee dependents, the open enrollment period, and late enrollees – as well as the resolution of disputes over those issues – are expressly covered by the health plan SPD.

Regarding coverage for dependents, the health plan SPD provides: "[i]f the Employee is covered by this Plan, the Employee may enroll his or her Dependents;" however, "[c]overage is provided only for those Dependents the Employee has reported to the Plan Administrator and added to his or her coverage by completing the correct application." (Harris Decl., Ex. A, pp. 49, 52).  The health plan SPD further provides: "[i]f the Employee or the Employee's Dependents do

---

[2] Similarly, Section 37.2 of the CBA concerns dental benefits, and provides: "[Kroger] agrees to make available to eligible employees a choice of one (1) dental plan, high option.  A summary can be found as Attachment #2 to this Agreement. ***A complete Summary Plan Description (SPD) Booklet is available and those terms and conditions will govern those items not noted in Attachment #2.***" (*Id.*, § 37.2) (emphasis added).

[3] The relevant language of the SPDs for "Plan A" and "Plan C" are identical, but with slightly different pagination. For the sake of brevity, Kroger collectively refers to both SPDs as the "health plan SPD" and cites to the SPD for "Plan A;" the identical content can be found in the SPD for "Plan C," one page later.

not enroll when first eligible, it will be necessary to wait for the next open enrollment period." (*Id.*, p. 50).  The lone exception is a "qualifying life event," such as marriage, divorce, birth, adoption, exhaustion of COBRA benefits, or other loss of eligibility under a prior health plan. (*Id.*, p. 51).

The health plan SPD sets forth a mandatory dispute resolution process, independent from the CBA, for resolving complaints about coverage and benefits.  First, the employee must submit a "claim for benefits" to the Claim Administrator, Anthem.  (Harris Decl., Ex. A, p. 129).  Anthem has "the power to construe the [SPD], to determine all questions arising under the Plan, and to resolve [employee] appeals" and its "determination shall be final and conclusive…." (*Id.*, p. 158).  However, if a claim is denied, the employee has the "right to appeal [that] adverse benefit determination" to Anthem.  (*Id.*, p. 130).  And, if Anthem denies that appeal, the employee can petition for an "external review," and has the right to "bring a civil action under Section 502(a) of ERISA within one year of appeal decision."  (*Id.*, pp. 133-135).

Similar to the enrollment provisions of the health plan SPD, the dental SPD provides that an employee's coverage election cannot be changed absent "a qualifying event as defined under Internal Revenue Code Section 125."  (Harris Decl., Ex. C, p. 2).  The dental SPD's "exclusions and limitations" are set forth in the plan Certificate, which is incorporated into the dental SPD. (*Id.*, p. 1; *see also,* Harris Decl., Ex. D).  Through the Certificate, the dental SPD requires enrollment during the open enrollment period and prohibits enrollment "at any other time" except for certain qualifying life events that do not apply here.  (Harris Decl., Ex. D, p. 3).

And, just like the health plan SPD, the dental SPD contains its own dispute resolution process – separate from the CBA – for handling disputes over benefits and coverage: "[a]ll Claims for Benefits must be filed with Delta Dental," which will adjudicate the claim within 30 days. (Harris Decl., Ex. D, p. 4).  If the employee receives notice of an adverse benefit determination,

they can appeal the decision to Delta Dental, who will adjudicate the appeal within 60 days; if the employee loses that appeal, then they can file a lawsuit in court. (*Id.*, pp. 11-12).

## C. THE 2025 OPEN ENROLLMENT PERIOD

In 2024, Kroger notified all employees that "[y]our current benefit elections end on December 31 and will not roll over to next year," and further explained, "[i]f you want coverage for 2025, you MUST enroll by November 22." (Harris Decl., Ex. E) (emphasis original). Kroger employees also received the Company's 2025 Enrollment Guide. (Harris Decl., Ex. F). The Enrollment Guide stated:

> The Open Enrollment period is from November 4th to November 22nd. All active associates covered by the Master Teamsters Agreement will have an active enrollment for 2025. You will need to enroll to have coverage for 2025. If you do not go online during the Open Enrollment period and make your elections, you will not have coverage for 2025.

(*Id.*, p. 2). Importantly, the Enrollment Guide reminded employees that they could not change their benefit elections at a later time: "You don't normally get to change your benefits during the year. The only opportunity to change is if you experience an I.R.S. Qualifying Life Event." (*Id.*, p. 3). The Enrollment Guide even reminded employees, "You must verify your dependents' eligibility for coverage during the 2025 enrollment process." (*Id.*, p. 4).

## D. MR. PRIETO'S GRIEVANCE

On November 5, 2024, employee Alejandro Prieto elected Kroger's health insurance and dental coverage for himself only, but not for any of his covered dependents. (Dkt. 1-2; Harris Decl., ¶ 15). Mr. Prieto could have updated his benefit elections at any time during open enrollment – up to and including November 22, 2024 – but he did not do so. (*Id.*).

On January 8, 2025, more than six weeks after Kroger's open enrollment period had already expired, Mr. Prieto noticed he failed to elect health and dental coverage for his wife and

daughter, and submitted a claim for benefits to the Company's Benefit Plan. (Harris Decl., Ex. G). On January 17, 2025, the Company's Benefit Plan Appeal Committee responded to Mr. Prieto's claim, explaining that his online enrollment activity confirmed "Open Enrollment was completed by selecting self only coverage.  Dependents were not selected to be covered for 2025."  (Harris Decl., Ex. H).  The letter further explained that while Kroger sympathized with Mr. Prieto's situation, the Company could not enroll his wife and daughter outside of the open enrollment period because it is "bound by federal laws that require we administer the Company benefit plan according to the plan rules/regulations."  (*Id*.).

On January 9, 2025 – the day after he had submitted his coverage claim to Kroger's Benefit Plan – Mr. Prieto filed a grievance with the Union (the "Grievance"), alleging that Kroger violated Article 37, Section 1 of the CBA. (Dkt. 1-2).  According to Mr. Prieto: "Due to circumstances out of my control,  my wife and daughter are not covered by my insurance. I completed the procedure on computer at work." (*Id*.).  He asked "for my wife and daughter to be reinstated on my insurance ASAP and backdated to 1-1-25." (*Id*.).  On March 27, 2025, Kroger responded to Mr. Prieto's Grievance, explaining that "the terms of the healthcare plan are not governed by the CBA.  Rather, such terms are dictated by the healthcare plan documents."  (Harris Decl., Ex. I).  Kroger, thus, refused to process the grievance, and informed the Union that employees should address any disputes concerning health insurance benefits to the Company's Benefit Plan. (*Id*.).

Mr. Prieto followed this instruction.  On April 1, 2025, he submitted an appeal to Kroger's Benefit Plan.  (Harris Decl., Ex. J).  In this appeal, Mr. Prieto conceded that he did not enroll his wife or daughter during the open enrollment period: "When I did open enrollment, and I seen my family members listed, I thought that it meant they were covered.  I didn't realize that I needed to select each of them in order for them to be covered." (*Id*.).  On April 22, 2025, the Benefit Plan's

Second Appeal Committee responded to Mr. Prieto's coverage appeal and again explained that his wife and daughter could not be retroactively added to his health insurance and dental plans outside of the open enrollment period, because Kroger is "bound by federal laws that require [it] administer the Company benefit plan according to the plan rules/regulations. These laws require that we treat all plan participants equally under all circumstances." (Harris Decl., Ex. K). That same day, the Union filed this lawsuit. (Dkt. 1).

## III. ARGUMENT

### A. THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE UNION DOES NOT STATE A COLORABLE CLAIM FOR BREACH OF CONTRACT.

"The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Oklahoma Inc*., 762 F.3d 1130, 1134 (10th Cir. 2014) (quotations omitted). The Union alleges this Court has subject matter jurisdiction under 29 U.S.C. § 185, otherwise known as § 301 of the LMRA. (Dkt. 1 ¶ 5). The LMRA provides federal question jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization…." 29 U.S.C. § 185(a).

However, federal question "jurisdiction under § 1331 exists only where there is a 'colorable' claim arising under federal law." *McKenzie v. U.S. Citizenship & Immigration Services, Dist. Dir*., 761 F.3d 1149, 1156 (10th Cir. 2014); *Arbaugh v. Y&H Corp., 546* U.S. 500, 513 (2006) (same). "A claim can be meritless while still being colorable … but a court may dismiss for lack of subject-matter jurisdiction 'when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *McKenzie* at 1156-57 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

89 (1998)).  Here, the Union's claim for breach of contract is so wholly insubstantial and completely devoid of merit that the Court lacks subject matter jurisdiction.

### 1.  There is no plausible claim that Kroger breached Article 13 of the CBA.

The Union's lawsuit is premised on, and the scope of its claim is limited to, its allegation that Kroger breached Article 13 of the CBA by refusing to proceed with and arbitrate Mr. Prieto's Grievance. (Dkt. 1, at ¶¶ 15-18).  But Kroger's refusal to proceed could not possibly have violated Article 13, because the subject matter of Mr. Prieto's Grievance does not fall within the "contents" of the CBA.  In fact, Article 37 expressly excludes from the CBA any disputes about the terms and conditions of health insurance and dental benefits, and mandates that those will be governed by the applicable SPDs and their separate claims procedures.  Mr. Prieto knows this, of course, because he is actively pursuing his claim for benefits against the applicable ERISA plans through those procedures.

#### a.  The CBA does not address Plan administration issues, such as open enrollment and late enrollees.

The scope of the CBA's grievance and arbitration provision is quite narrow.  Section 13.1 states that only a "grievance, dispute or complaint over the interpretation or application of the *contents of* this Agreement" can be resolved through its grievance and dispute resolution process. (Dkt. 1-1 at § 13.1) (emphasis added).  Mr. Prieto's Grievance concerns the administration of Kroger's health insurance and dental plans, and his request to retroactively enroll his dependents in those plans after expiration of the open enrollment period.  (Dkt. 1-2).  Thus, Kroger's refusal to proceed with Mr. Prieto's Grievance could *only* give rise to a claim for breach of contract if the administration of health insurance and dental plans, and the parameters of open enrollment, were part of the "contents" of the CBA.  And, of course, those topics can be found nowhere in the CBA.

The CBA makes two substantive promises about health insurance and dental benefits. First, the CBA promises that, after sixty (60) days of employment, employees "will be eligible to receive health care benefits...or opt for no coverage." (Dkt. 1-1, § 37.1). Second, Kroger "agrees to make available the choice of two Health Care Options: Plan A or C; and one Dental Option," with the dental option consisting of "a choice of one (1) dental plan, high option." (*Id*, §§ 37.1-37.2). Mr. Prieto's Grievance does not allege that Kroger refused to provide an eligible employee with the option of receiving healthcare coverage under Plan A or Plan C, along with dental benefits, or selecting "no coverage." Instead, Mr. Prieto's Grievance seeks retroactive coverage for ***non-employee*** dependents outside the open enrollment period. (Dkt. 1-2). None of this is covered by, or within the "contents of" the CBA.[4]

It should not be surprising that the CBA does not address the open enrollment period for health and dental benefits for non-employee dependents, or any other administrative aspect of Kroger's benefit plans. The CBA is a contract between Kroger and the Union that governs workplace labor disputes (Dkt. 1-1), and the Union represents Kroger's hourly employees (Dkt. 1 at ¶ 3), not their family members. Moreover, ERISA requires that health benefits be described in an SPD, which must specify the dispute resolution and appeal procedures for disputes concerning benefits. 29 CFR § 2520.102-3(s). Given the complex and specialized rules, regulations, and procedures mandated by ERISA, it is no wonder the CBA defers plan administration and coverage disputes to the applicable SPDs. (*See, infra.,* at pp. 11-12, 19-20). Accordingly, because the underlying Grievance does not involve a dispute regarding the "contents" of the CBA, there is no subject matter jurisdiction under the LMRA.

---

[4] If anything, Mr. Prieto's Grievance establishes that Kroger ***complied*** with § 37.1 and § 37.2 of the CBA, by providing its employee – i.e., Mr. Prieto – with both health insurance coverage and dental benefits. (*Id.*).

**b. The CBA expressly excludes disputes about health insurance and dental benefits.**

Not only has the Union failed to allege facts establishing that Mr. Prieto's Grievance falls within the "contents" of the CBA, but Article 37 expressly *excludes* from the CBA disputes about the terms and conditions of health and dental benefits. Instead, the CBA specifies that the ***"Terms and Conditions of the SPD will govern*** those items not noted in Attachments #1, and 2." (Dkt. 1-1, §§ 37.1-37.2) (emphasis added). In turn, Attachments #1 and #2 merely describe the financial aspects of Kroger's health insurance and dental plans – i.e., employee cost, deductibles, co-pay amounts, out of pocket maximums, and percentage of coverage for various types of in-network and out-of-network treatments. (*Id*. at ECF Page ID# 43-44). Neither Attachment #1 nor Attachment #2 say anything about the enrollment of dependents, the open enrollment period, late enrollees, or any other aspect of plan administration. (*Id*.). Instead, according to the clear language of § 37.1 (health) and § 37.2 (dental) of the CBA, those issues are governed by the "Terms and Conditions of the SPD" – not the CBA. (*Id*., §§ 37.1-37.2). As described in greater detail above (*supra.,* pp. 5-7), and unlike the CBA:

- the ***SPDs*** address the requirements for enrolling dependents (Harris Decl., Ex. A at pp. 49, 52 & Ex. D at p. 3);

- the ***SPDs*** address the open enrollment period and the prohibition against late enrollees (*Id*., Ex. A at p. 50 & Ex. D at p. 3);

- the ***SPDs*** outline the limited "qualifying life events" that would allow a participant to enroll outside of open enrollment (*Id*., Ex. A at p. 51 & Ex. D at p. 3); and

- the ***SPDs***, without even mentioning the CBA, set forth comprehensive procedures for disputing, appealing and suing in court (not arbitration) adverse determinations about benefits and coverage. (*Id.*, Ex. A at pp. 129-135 & Ex. D at pp. 4, 11-12).

Because the CBA expressly provides that the SPDs govern the terms and conditions of Kroger's health insurance and dental benefits, and because the SPDs provide their own

administrative procedures for resolving disputes concerning those benefits, the Union cannot plausibly suggest that the CBA's grievance process was intended to address any of those issues. As such, there is no colorable claim that Kroger violated the CBA by refusing to proceed and arbitrate Mr. Prieto's Grievance.

### 2.  Mr. Prieto's actions establish the Union's claim is implausible.

Before Mr. Prieto filed his Grievance with the Union, he first challenged the denial of benefits for his dependents by filing a claim with the Company's Benefit Plan, pursuant to the dispute resolution procedures mandated by the SPDs.  (*See supra.*, p. 7-9; *see also,* Harris Decl., Ex. G).  When Kroger refused to recognize his Grievance (on the ground that it concerned an issue that fell outside the purview of the CBA), Mr. Prieto moved forward with his benefits claim by filing an appeal.  (*Id.*; *see also*, Harris Decl., Ex. J).  The fact that Mr. Prieto has availed himself of the dispute resolution and appeal mechanisms outlined in the SPDs, and is actively using those mechanisms to resolve the very issue raised in his Grievance, further demonstrates there is no colorable claim that Kroger violated the CBA by not proceeding with the Grievance.

For each of these reasons, the Union fails to assert a colorable claim that Kroger violated Article 13 of the CBA, and fails to establish subject matter jurisdiction under the LMRA.  These failures warrant one result: dismissal of the Complaint under Rule 12(b)(1).

### B.  THE UNION FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Should the Court decline to dismiss this action under Rule 12(b)(1), the Union's Complaint should be dismissed, with prejudice, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The Union's claim is for breach of the CBA, and the relief it seeks is to

compel Kroger to arbitrate Mr. Prieto's Grievance.  The Union cannot state a claim for that relief, however, because the CBA and SPDs establish the Grievance is not arbitrable as a matter of law.[5]

"A court – not an arbitrator – typically determines whether the parties intended to arbitrate a particular dispute."  *National Nurses Org. Comm., Missouri & Kansas/Nat'l Nurses United v. Midwest Div. MMC, LLC*, 70 F.4th 1315, 1318–19 (10th Cir. 2023) (holding grievance non-arbitrable under a collective bargaining agreement).  Because arbitration is "strictly a matter of consent," a court can order arbitration only if the parties "have consented to arbitrate the dispute at issue." *Id*. (quotations omitted).  A rebuttable presumption of arbitrability arises if the arbitration provision is ambiguous about whether it covers the dispute at hand; the presumption does ***not*** arise where – as here – the arbitration language is clear and unambiguous. *Id*.  Where an ambiguous arbitration covenant gives rise to a presumption of arbitrability, however, the party opposing arbitration can rebut the presumption and avoid sending a claim to arbitration where – again, as here – there is "forceful evidence" of an intent to exclude the claim from arbitration.  *Id*.

In this case, the arbitration provision of the CBA is unambiguous.  As explained above in Section III(A)(1), there is no reasonable interpretation of the CBA that would require Kroger to arbitrate a grievance concerning the administration of health insurance and dental benefits to non-employee dependents. (*See, supra.*, pp. 10-12).  Sections 37.1-37.2 of the CBA expressly defer such issues to the SPDs, and any dispute about those issues fall outside the "contents of" the CBA and are non-arbitrable under § 13.1. (Dkt. 1-1, at ECF PageID## 16-18, 33).

---

[5] The Court can consider the CBA and SPDs on a Rule 12(b)(6) motion.  "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  FED. R. CIV. P. 10(c)  Moreover, if there is any conflict between the allegations of a Complaint and its exhibits, then the exhibit controls. *Brokers' Choice*, 861 F.3d at 1105.  When deciding a Rule 12(b)(6) motion, the Court may also consider any "documents referenced in the complaint that are central to the plaintiff's claims, provided their authenticity is undisputed…."  *Brown*, 124 F.4th at 1264.  The CBA is attached as an exhibit to the Complaint (Dkt. 1-1); the CBA expressly refers to the SPDs (Dkt. 1-1, at ECF PageID# 33), which are central to the Union's claims.

However, even if the Court were to find the CBA's arbitration provision ambiguous, Kroger has ample "forceful evidence" to rebut that presumption in this case. First, the CBA expressly excludes claims about health insurance and dental benefits and, instead, provides that the SPDs (which have their own dispute resolution procedures) will govern. Second, the CBA does not concern itself with non-employees. Third, Kroger and the Union plainly did not intend to give a labor arbitrator the power to award relief in violation of ERISA mandates and IRS regulations.

1. **An Administrative Dispute Resolution Process Outside the CBA Governs Claims for Health Insurance and Dental Benefits.**

The CBA expressly excludes from arbitration – and defers to the SPDs – any disputes about the "terms and conditions" of Kroger's health insurance and dental plans (other than the financial aspects of those plans, specifically enumerated in Attachments #1 and #2). (Dkt. 1-1 §§ 37.1-37.2). Thus, according to the clear language of the CBA, any issues concerning open enrollment, coverage for non-employee dependents, late enrollees, or any other administrative aspect of Kroger's health insurance and dental plans, are the exclusive purview of the SPDs. (*Id.*). And the SPDs, in turn, have their own dispute resolution procedures that govern claims for coverage or benefits, including the appeal and litigation of claim determinations. (*See, supra.*, pp. 10-12).

In circumstances similar to those presented in this case, numerous appellate courts have found that when an insurance plan document – like an SPD – provides a framework for resolving benefits and coverage disputes, that constitutes "forceful evidence" the dispute is non-arbitrable under a collective bargaining agreement. For example, the union in *International Association of Machinists v. Waukesha Engine Division*, 17 F.3d 196 (7th Cir. 1994), sued to compel an employer to arbitrate a dispute about coverage under a group health plan. In that case, like this one, an employee's wife was denied medical benefits under an employer's insurance plan. *Id.* at 197. The union filed a grievance over the denial of benefits, and the employer (like Kroger) took the position

that the dispute was not arbitrable under the parties' collective bargaining agreement. *Id*.  The arbitration provision in that agreement was nearly identical in scope as the CBA at issue here: "The authority of the arbitrator shall be limited to the construction and application of the terms of this Agreement, as applied to the specific grievance presented for arbitration."  *Id*. at 198.

Just like the CBA in this case, the collective bargaining agreement at issue in *Waukesha Engine* deferred issues concerning plan administration to the SPD: "The Company will continue to provide the present employee insurance coverage as amended, for the term of this Agreement, as specified in the Summary Plan Booklet." *Id*. at 198.  The Summary Plan Booklet, in turn, provided that Aetna was in charge of making decisions concerning medical benefits, that members could appeal those decisions to Aetna, and that a member could sue for denial of benefits in state or federal court.  *Id*.  The court explained that because the "Plan expressly provides for an alternative review procedure," that "indicates that the parties did not intend to arbitrate disputes concerning the denial of benefits."  *Id*.  On that basis, the court found the dispute was not subject to arbitration under the collective bargaining agreement, and affirmed dismissal.  *Id*. at 199.

Nearly the same thing occurred in *United Steelworkers of America v. Commonwealth Aluminum Corp.,* 162 F.3d 447 (6th Cir. 1998).  In that case, a union sued an employer to compel arbitration of a grievance concerning the denial of group insurance benefits.  Similar to the instant case, the arbitration provision in the parties' collective bargaining agreement covered any "matters involving the interpretation and application of all provisions of this Agreement."  *Id*. at 448-49. That collective bargaining agreement specified that the terms and conditions of insurance benefits would be set forth in summary plan booklets that would be "incorporated herein and made a part of this Labor Agreement." *Id*. at 449.  Those booklets set forth a claim and appeal procedure which granted the plan administrator broad authority to make final and binding decisions, and allowed

the plan participants to sue for benefits in court. *Id.* The court held that a grievance concerning a denial of benefits under the plan was not arbitrable because the collective bargaining agreement's incorporation of the plan – and, thus, the plan's independent "claims review procedure" – constituted forceful evidence the parties intended to exclude from arbitration disputes over insurance benefits. *Id.* at 451, 454.

Similarly, the union in *Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256 (6th Cir. 2010), sued to compel arbitration to resolve a grievance under a collective bargaining agreement concerning rights under a pension plan. Under the parties' collective bargaining agreement, the employer "agree[d] to provide a qualified Pension Plan," and directed the employees to refer to the pension plan's SPD: "[e]ach employee may obtain a copy of the Summary Plan Description." *Id.* at 261. The court held that a grievance concerning benefits under the plan was not arbitrable under the collective bargaining agreement, because "the CBA references the Pension Plan and the Pension Plan explicitly provides an alternate procedural framework for resolving pension disputes." *Id.* at 262.

Courts rule the same way even where a collective bargaining agreement's arbitration provision is broader than the CBA here. For example, the union in *Printing Specialties & Paper Products Union Local 680 v. Nabisco Brands, Inc.*, 833 F.2d 102 (7th Cir. 1987) sued an employer to compel arbitration of a dispute over pension benefits. The arbitration provision in the parties' collective bargaining agreement was broadly worded, and covered "any grievance or misunderstanding involving wages, hours or working conditions which any employee may desire to discuss and adjust with the Company." *Id.* at 103. The parties' collective bargaining agreement referenced a pension plan, which had its own procedure for resolving disputes over benefit claims. *Id.* The Seventh Circuit held that the union's grievance concerning the pension plan was not

arbitrable, based on several factors: the pension plan's independence from the collective bargaining agreement; the lack of pension plan terms in the collective bargaining agreement; the lack of incorporation of the terms of the pension plan into the collective bargaining agreement. *Id.* at 105 ("the passing reference to the Pension Plan in the collective bargaining agreement does not bring specific pension disputes…under the umbrella of the arbitration clause of the agreement.").

Similarly, the union in *United Steelworkers of America v. Rohm & Haas Co*., 522 F.3d 324 (3d Cir. 2008), sued an employer seeking to compel arbitration of a grievance concerning the denial of disability benefits under a health benefit plan.  The arbitration provision in that case covered "questions arising under this Agreement as involve wages (other than general adjustments), individual base rates, hours of employment and working conditions." *Id*. at 328.  The court held that although the arbitration clause was broad, the claim for disability benefits was not arbitrable for several reasons, including that the benefit plan had its own separate dispute resolution and appeals process. *Id*. at 332-34.

With respect to the Grievance in this case, the CBA expressly states that the "terms and conditions" of health insurance and dental benefits will be governed by the SPDs.  (Dkt. 1-1, §§ 37.1-37.2).  The SPDs, in turn, provide an alternate procedural framework for resolving disputes over insurance coverage and benefits, clearly establishing that the parties did not intend to arbitrate such disputes under the CBA. (Harris Decl., Ex. A at pp. 129-130, 133, 135 & Ex. D at pp. 4, 11-12).  In light of such forceful evidence, the Union's Complaint against Kroger to compel arbitration fails for the same reason as the unsuccessful attempts to compel arbitration in the cases cited above.

## 2.  The CBA Does Not Apply to Non-Employees.

The underlying grievance in this case is also not arbitrable under the CBA because the actual aggrieved parties – Mr. Prieto's wife and daughter, who do not have health insurance and

dental benefits – are not Kroger employees.  The CBA is a contract between Kroger and the Union governing workplace labor disputes involving Company employees, not their dependents.

The Tenth Circuit's decision in *International Brotherhood of Electrical Workers v. Public Service Company of Colorado*, is illustrative.  773 F.3d 1100, 1110 (10th Cir. 2014) (union's grievance over retired-worker healthcare benefits was not arbitrable under the parties' collective bargaining agreement).  The arbitration provision was broadly worded, and covered any disputes "relating to hours, wages, or conditions of employment." *Id*. at 1103.  However, because retired workers were not "employees," the court concluded the arbitration covenant was "not susceptible to an interpretation" that would cover disputes over their insurance benefits.  *Id*. at 1109.

Just as the arbitration provision in *Public Service Co.* was not susceptible to an interpretation that would include disputes about health insurance benefits for non-employee retired workers, the CBA in this case is not susceptible to an interpretation that would cover disputes about health insurance and dental benefits to non-employee dependents.

### 3.  The Union's Grievance Seeks Relief that would be Prohibited by ERISA and IRS Regulations.

Kroger's health insurance and dental plans are qualified ERISA plans, which must be administered "in accordance with the documents and instruments governing the plan." 29 U.S.C. §1104(a)(1)(D).  In this case, those plan documents include the SPDs, which expressly state that if an employee misses the open enrollment deadline, then "it will be necessary to wait for the next open enrollment period" before they can make any changes to their benefit elections. (Harris Decl., Ex. A, p. 50).  The only exception, and the only way to allow for a "late enrollee" after expiration of the open enrollment deadline, is if the employee or their dependent experiences a "qualifying life event," such as marriage, divorce, birth, adoption, exhaustion of COBRA benefits, or other loss of eligibility under a prior health plan. (*Id*., p. 51).

These provisions of the SPD are mandatory, and required under Section 125 of the Internal Revenue Code, which establishes the rules by which an employee can choose between receiving compensation in cash or as qualified benefits such as pre-tax payment of health insurance premiums.  26 U.S.C. § 125.  IRS regulations prohibit an employer or plan administrator from allowing participants in such a plan to change a benefit election outside of an open enrollment period, absent a qualifying life event.  26 C.F.R. § 1.125-4.

Neither ERISA nor IRS regulations permit election changes to correct an employee's mistake.  If an employer were to add a participant outside of this statutory framework, then the benefit plan would be out of compliance and at risk of losing its favorable tax treatment, incurring IRS penalties, and potential disqualification of the entire plan.  Yet, that is exactly what Mr. Prieto's Grievance seeks from Kroger.  If his Grievance were to proceed to arbitration under the CBA and the labor arbitrator were to grant the relief requested, that would result in a clear violation of ERISA and IRS regulations, jeopardizing the *entire benefit plan* for all Kroger employees.  It is implausible to suggest that Kroger and the Union intended to permit a local labor arbitrator to award such relief.  This is forceful evidence that Mr. Prieto's Grievance is not arbitrable under the CBA.

## IV.  <u>CONCLUSION</u>

For all the reasons set forth above, Kroger respectfully requests that this Court enter an Order: (a) dismissing the Union's Complaint under Rule 12(b)(1), for lack of subject matter jurisdiction; or in the alternative (b) dismissing the Complaint, with prejudice, under Rule 12(b)(6).

Dated: June 11, 2025

20

Respectfully submitted,

**THE KROGER CO., Defendant**

By:  */s/  Kathryn T. Alsobrook*
         One of Its Attorneys

Kathryn Thomas Alsobrook (KS # 26171)
Dysart Taylor McMonigle Brumitt & Wilcox, PC
700 West 47th Street, Suite 410
Kansas City, Missouri 64112
(816) 931-2700
kalsobrook@dysarttaylor.com

         *with*

Christopher S. Griesmeyer (IL # 6269851, Pro
Hac Vice)
Greiman, Rome & Griesmeyer, LLC
205 West Randolph Street, Suite 2300
Chicago, Illinois 60606
(312) 428-2750
cgriesmeyer@grglegal.com

21

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 11, 2025, a copy of the foregoing **Defendant's Memorandum of Law in Support of Motion to Dismiss Complaint** was electronically filed with the Court and served via the Court's CM/ECF system to Plaintiff's counsel of record at the following address:

Michael E. Amash, No. 22998
Cayla M. Rodney, No. 29030
Blake & Uhlig, PA
6803 West 64th Street, Suite 300
Overland Park, Kansas
(913) 321-8884
mea@blake-uhlig.com
cmr@blake-uhlig.com

/s/   Kathryn T. Alsobrook
Kathryn Thomas Alsobrook (KS # 26171)
Dysart Taylor McMonigle Brumitt & Wilcox, PC
700 West 47th Street, Suite 410
Kansas City, Missouri 64112
(816) 931-2700
kalsobrook@dysarttaylor.com

Counsel for Defendant, The Kroger Co.